UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ROBERT L. MILLER, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:05-CV-169 CAN |
| | ) | |
| SEVYLOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND OPINION**

Plaintiff, Robert L. Miller, Sr. ("Miller"), filed this products liability action on March 23, 2005, against Defendants Wyndham International, Inc., Wyndham Management Corporation, and Rosehall Associates, LLP (collectively "Wyndham"), as well as Sevylor, Inc. ("Sevylor"). On January 23, 2006, Miller and Wyndham reached a settlement in this case and voluntarily dismissed this action. The case remained pending against Sevylor. Despite the dismissal of Wyndham, Sevylor never sought to add Wyndham as a non-party Defendant. This case proceeded to a three day jury trial between Miller and Sevylor on February 28, 2006, and on March 2, 2006, the jury found that Sevylor was 100% at fault for the accident and awarded Miller $550,000. On March 7, 2006, an amended entry of judgment was entered in favor of Miller and against Sevylor. On March 13, 2006, Sevylor filed a motion for a new trial. Sevylor asserts three grounds for requesting a new trial: 1) the judgment is not supported by the evidence; 2) the judgment is the result of misconduct of counsel; and 3) the judgment represents excessive damages. In addition, on March 13, 2006, Sevylor also filed a motion for relief from judgment due to a clerical error pursuant to Fed. R. Civ. P. 60(a). Sevylor requested a set-off in

the judgment for the amount of Wyndham's settlement. For the following reasons, Sevylor's motions [Doc. No. 66, 67 & 68] are **DENIED**.

**I.    SEVYLOR'S MOTION FOR A NEW TRIAL**

    A.    Applicable Law

Fed. R. Civ. P. 59(a) states that

> [a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

A new trial may be granted if the verdict is against the clear weight of the evidence, the damages are excessive, or the trial was unfair to the moving party. Miskis v. Howard, 106 F.3d 754, 757 (7th Cir. 1997). Improper comments during closing arguments rarely rise to the level of reversible error. Id. at 764. In addition, a damages award should be vacated only if it is "monstrously excessive," considering whether it is out of line with verdicts in similar cases, or if it bears no rational connection to the evidence. Id.

    B.    The Judgment is Supported by the Evidence

Sevylor's first argument is that the judgment is not supported by the evidence because the judgment was predicated upon the expert testimony of Dr. Brach. Sevylor challenges Dr. Brach's conclusions and the methods and principles he relied upon to formulate these conclusions. Because Sevylor is challenging Dr. Brach's methods and principles, Sevylor's objection falls within the parameters of Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

On June 27, 2005, this Court entered a scheduling order governing the various deadlines in this case. Pursuant to the June 27, 2005 scheduling order, all Daubert motions were to be filed

2

by February 1, 2006.  At a telephonic scheduling conference on November 1, 2005, the parties informed this Court that they would not be filing dispositive or <u>Daubert</u> motions.  Because Sevylor indicated that it would not be filing a dispositive or <u>Daubert</u> motion, and because Sevylor did not file a motion within the prescribed time period, it has waived its right to now claim that Miller's expert does not meet the requirements set forth in Rule 702 or <u>Daubert</u>.[1]

Sevylor, citing to <u>Kirstein v. Parks Corp.</u>, 159 F.3d 1065 (7th Cir. 1998), contends that the filing of a <u>Daubert</u> motion is not a prerequisite for raising <u>Daubert</u> issues.  However, in <u>Kirstein</u>, the plaintiffs asserted they were entitled to a hearing regarding the admissibility of expert opinions.  The court merely stated that the <u>Daubert</u> inquiry does not have to take any specific form.  <u>Id.</u> at 1067.  In the present case, this Court, in an attempt to effectively manage this case, gave the parties a firm deadline on when any <u>Daubert</u> related issues must be raised.  Sevylor simply failed to comply with this Court's directives.

Sevylor also asserts that it has not waived its right to a <u>Daubert</u> challenge because this Court vacated the June 27, 2005 scheduling order on November 1, 2005.  However, as the docket sheet clearly reveals, this Court did not vacate the scheduling order.  Rather, based upon the parties' assertions that they did not intend to challenge the expert witnesses, this Court merely accelerated the date of the jury trial.  Because Sevylor has failed to raise this issue in the manner this Court specifically prescribed, Sevylor has waived its right to a <u>Daubert</u> challenge of Dr. Brach.

---

[1] It is interesting to note that despite this representation, Miller's counsel filed a <u>Daubert</u> motion within the applicable time limit.  When this Court raised the issue of waiver with Miller's counsel during the final pretrial conference, Sevylor's co-counsel was quick to suggest that Miller had waived this issue.  Now that it is Sevylor who is belatedly attempting to raise a <u>Daubert</u> issue, Sevylor contends it was not a waiver to never address this issue before trial.

3

Furthermore, this Court notes that in the February 10, 2006 pretrial order, the parties stipulated to the authenticity and the admissibility of all listed exhibits.  Because Dr. Brach's report is listed as an exhibit, Sevylor has stipulated to its admissibility and the opinions contained in his report.  Sevylor's objection once again comes too late and is waived by its stipulation.

However, even if Sevylor had not waived its right to a Daubert challenge and if Sevylor had not stipulated to the admissibility of Dr. Brach's report, after hearing all of the testimony, this Court is convinced that Dr. Brach was competent to testify as an expert witness and that his theories are reliable under Rule 702 and Daubert.

 Fed. R. Evid. 702 states as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 has liberalized the standard for qualifying as an expert witness. Wilson v. City of Chicago, 6 F.3d 1233, 1238 (7th Cir. 1993).  As a threshold matter, courts must examine whether 1) the expert will testify to valid scientific knowledge, and 2) whether that testimony will assist the trier of fact in understanding or determining a fact in issue. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993); Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000) (holding that "the district court must consider whether the testimony will assist the trier of fact with its analysis of any of the issues involved in the case").  In Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999), the Supreme Court held that this inquiry must

be taken in all matters relating to expert testimony and not only in those which contain scientific testimony.

There can be no serious dispute that Dr. Brach, who has a Ph.D. in Mechanical Engineering, has taught, published and testified previously on these matters, has the required background to opine as to design elements.  Sevylor's sole basis for the Daubert challenge is the assertion that Dr. Brach's methods and principles are not reliable because he never did any testing and thus, he could not opine as to the amount of velocity or impact needed to cause the injury, or even how the injury occurred.  However, in Dr. Brach's expert report, he does list the evaluation procedure which he used in reaching his opinions.  (Pl. Exh. 3).  Furthermore, he does opine as to how the accident might have occurred based upon the design features.  Consequently, in accordance with Rule 702 and Daubert, this Court is very comfortable in concluding that Dr. Brach's testimony was based upon reliable principles.[2] What weight, if any, is to be given to Dr. Brach's opinion, is of course, a matter for the jury to decide.

C.     There was no Misconduct of Counsel

Sevylor's second argument is that the judgment was the result of alleged misconduct of counsel.  Specifically, Sevylor relies upon two events when alleging that there was misconduct.  First, Sevylor contends that Miller's counsel referred to him as "judge" which might cause the jury to consider his evidence in a superior light.  Second, Sevylor alleges that the jury might

---

[2]Each party in this case presented an expert witness.  Miller's expert was an expert in design engineering, but did not have a specialized background in water park engineering.  On the other hand, Sevylor's expert was very knowledgeable about the water park industry and safety issues, yet did not necessarily possess a design engineering background.  To allow only those experts who had a specific speciality in water park equipment design engineering would have greatly limited the amount of available experts, as this is a very narrow speciality.  Rather than require such specific credentials from either party, this Court allowed both parties' experts to testify regarding matters that fell within their areas of expertise.

5

have given undue weight to Miller's testimony because Miller's son, the Honorable Robert L. Miller, Jr., is the Chief Judge in the courthouse where the case was tried.

        1.      <u>Counsel did not Inappropriately Refer to Miller as "Judge"</u>

Sevylor first argues that Miller's counsel inappropriately referred to him as "judge" which may have allowed the jury to consider his evidence in a superior light.  As an initial matter, on November 1, 2005, this Court issued an order with reference to the conduct of the trial.  Pursuant to the November 1, 2005 order, any motions *in limine* were to be filed no later than seven days before the final pretrial conference that was scheduled for February 10, 2006.  However, Sevylor again disregarded this Court's order and did not file a motion *in limine* with regards to this issue. And, during the February 10, 2006 final pretrial conference, Sevylor's co-counsel did not raise this issue.  As this subject matter would have been the type of issue appropriately raised in a motion *in limine*, this Court could assume that Sevylor waived its arguments with regards to referring to Miller as "judge."

However, even if Sevylor had properly and timely raised this issue, Sevylor's contentions are not supported by the record.  On the morning of the first day of the trial, Sevylor requested that Miller's counsel not refer to him as "judge."  Miller's counsel agreed and routinely referred to Miller as "Mr. Miller" or "Bob."  As indicated by both counsel in their motion and response, the only reference to Miller being a retired judge occurred in closing argument when counsel highlighted how important Miller's eyesight had been to him throughout his lifetime as a lawyer and a judge. <u>See</u> Trial Trans., p.25 [Doc. No. 71].  These slight, passing references are of no consequence as this information was appropriate for the jury to consider in determining the value of Miller's lost eyesight, and certainly do not constitute misconduct of counsel.  This conclusion

6

is in accordance with <u>Miskis</u>, which held that statements in closing arguments rarely rise to the level of reversible error.

    2.  <u>There is no Evidence that the Jury gave Undue Weight to Miller's Evidence</u>

  Sevlyor also speculates that there may have been jury confusion because Miller's son, the Honorable Robert L. Miller, Jr., is a judge in the courthouse where the case was tried, and that his portrait and name are displayed throughout the courthouse. Sevylor suggests that this may have improperly influenced the jury.

  This case was initially filed on March 23, 2005. At all relevant times, Chief Judge Miller was a district judge in the South Bend division. However, this case progressed for eleven months without Sevylor ever raising the issue of whether this case should be transferred to another division. Sevylor could have filed the appropriate motion, at which time this Court would have addressed this issue. But Sevylor chose not to. Furthermore, Sevylor could have filed a motion *in limine,* but once again, based upon a trial tactic by counsel, chose not to. When Sevylor's counsel appeared for the final pretrial conference, he had the opportunity to personally view the courthouse. Again, Sevylor did not raise any objections as to the location of the trial. Finally, at no time either before or during the trial did counsel ever make any objections as to which courtroom was being used. As a result, Sevylor has once again waived its right to now challenge the location of the trial.

  Despite this waiver, if Sevylor had raised the issue in a timely fashion, it could not establish any prejudice. Sevylor has failed to present any evidence showing that any juror even knew that there was a district court judge with the same name or that Miller was his father. In fact, the record shows the contrary. During voir dire, this Court specifically asked if anyone

7

knew the plaintiff in this case, Robert L. Miller, Sr., or any member of his family. Not a single juror indicated that they knew Robert L. Miller, Sr., or anyone in his family. If a juror had been confused by the similarity in names, or recognized a family member, they would have indicated this recognition during voir dire. In addition, at no time during the trial did anyone make any reference to Chief Judge Miller or to his presence in the courthouse. As a result, there is simply no evidence to suggest that the jury afforded Miller's evidence undue weight due to confusion between him and his son. Sevylor simply wants this Court to speculate and imply prejudice where none is shown. Sevylor's complaint is far too little and too late to warrant serious consideration.

      D.      <u>The Verdict was not Excessive as a Matter of Law</u>

Without citing to any legal authority, Sevylor argues that the $550,000 judgment was excessive as a matter of law. It appears that Sevylor's justification for this argument is its belief that the verdict was the result of misconduct of counsel. However, as analyzed above, this Court has found that counsel did not commit misconduct and therefore, the judgment is not excessive as a matter of law.

Furthermore, a damages award should be vacated only if it is "monstrously excessive," considering whether it is out of line with verdicts in similar cases, or if it bears no rational connection to the evidence. <u>Miskis v. Howard</u>, 106 F.3d at 764. As illustrated in Miller's response, it appears that this jury verdict is reasonably consistent with verdicts from other courts in which a plaintiff was compensated for the loss of an eye. As a result, because the jury's verdict is neither "monstrously excessive" nor unsupported by the evidence, this Court will not second guess their determination of Miller's damages and set aside their verdict.

Because Sevylor has failed to articulate any justification warranting a new trial, Sevylor's motions for a new trial [Doc. Nos. 67 & 68] are **DENIED**.

**II.    SEVYLOR'S MOTION FOR RELIEF FROM JUDGMENT**

On March 13, 2006, Sevylor also filed a motion for relief from judgment due to a clerical error pursuant to Fed. R. Civ. P. 60(a). Fed. R. Civ. P. 60(a) states:

> [c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders....

Sevylor argues that due to the inadvertence of counsel, this Court was not made aware of Miller's settlement with Wyndham and that set-off should have been requested before the judgment was entered. Thus, Sevylor contends that it is entitled to a set-off in the judgment in the amount of the Wyndham's settlement.

While Indiana law may allow for set-offs and credits from a joint tortfeasor, Indiana law also requires that a party name a settling co-defendant as a non-party before any set-off or credit will be allowed. See Mendenhall v. Skinner & Broadbent Co., 728 N.E.2d 140 (Ind. 2000). Under Indiana's comparative fault scheme, a named defendant may assert a "nonparty" defense, seeking to attribute fault to a nonparty rather than to the defendant.[3] Ind. Code Ann. § 34-51-2-14. When a defendant asserts this defense, the court then instructs the jury to determine the percentage of fault of each party and "any person who is a nonparty." Ind. Code Ann. § 34-51-2-7(b)(1). A defendant must affirmatively plead the nonparty defense, and the defendant carries the burden of proof on the defense. Ind. Code Ann. § 34-51-2-15.

---

[3]A non-party is defined as "a person who caused or contributed to cause the alleged injury, death, or damage to property but who has not been joined in the action as a defendant." Ind Code § 34-6-2-88.

In Mendenhall, a case almost directly on point to this case, the co-defendant reached a settlement with the plaintiff on the first day of the trial. Id. at 141. However, the remaining defendant did not name the settling defendant as a non-party. The remaining defendant proceeded to trial where the jury found in favor of the plaintiff. The defendant then orally moved to offset its judgment by the amount of the settlement with the former co-defendant. Id.

In analyzing whether the defendant was entitled to an set-off when he failed to affirmatively assert the non-party defense, the Indiana Supreme Court recognized the potential for double-recovery under the Indiana Comparative Fault Act. However, the court then stated that, in a case such as this one, when a settling co-defendant is not added by the remaining defendant as a nonparty, the jury cannot provide an allocation of fault to that party. Any effort by the court to calculate such a credit would be speculative. Id. at 144. What the jury did provide was an indication of such damages as it thought had been proximately caused by the litigating defendant, and presumably no more. Id. The court then stated,

> we think the ability of courts to implement the common law policy of credit during an age of litigation under the Comparative Fault Act is best served by a rule that *obliges* defendants to name the settling nonparty if they are to seek credit for the settlement. Id. (emphasis added).

What Sevylor is requesting that this Court do is contrary to the law of the forum state. Although Sevylor asserts that it is seeking relief from the judgment pursuant to Rule 60(a), there is no clerical error that this Court needs to correct. Rather, as Sevylor admits in its motion, it was counsel's mistake not to previously raise this issue. However, as an affirmative defense, Sevylor was required to name Wyndham as a nonparty in order to claim a set-off for any settlement. Despite ample time to do so, Sevylor failed to timely raise this issue, and has now waived its right to claim a set-off.

Sevylor seems to suggest that this Court merely should have been apprized of the settlement before hand and that a request for set-off should have been made before judgment was entered.  However, simply informing this Court of a settlement with a co-defendant and then requesting a set-off when Sevylor never added Wyndham as a non-party is exactly what Mendenhall did not allow.  As stated in Mendenhall, because the jury was only asked to ascertain liability between Miller and Sevylor, and because Sevylor did not raise a non-party defense, it would be difficult to now speculate as to whether the jury would have found any degree of liability against Wyndham.  Thus, because the jury found Sevylor 100% at fault, Sevylor's motion for relief from the judgment [Doc. No. 66] is **DENIED**.

### III. CONCLUSION

For the aforementioned reasons, Sevylor's motions for a new trial and motion for relief from judgment [Doc. Nos. 66, 67 & 68] are **DENIED**.

**SO ORDERED.**

Dated this 5th Day of April, 2006.

                                                s/Christopher A. Nuechterlein
                                                Christopher A. Nuechterlein
                                                United States Magistrate Judge